UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| EASTMAN CHEMICAL COMPANY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No.  2:10-cv-218 |
| | ) | Judge Mattice |
| URS CORPORATION, | ) | |
| | ) | |
| *Defendant/Third-Party Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APOLLO ENVIRONMENTAL | ) | |
| STRATEGIES, INC.; BMC HOLDINGS | ) | |
| INC.; TERRA CAPITAL, INC.; and | ) | |
| TERRA INDUSTRIES, INC., | ) | |
| | ) | |
| *Third-Party Defendants.* | ) | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court are the following:

• Motion to Strike Defendant's Third Party Complaint or, in the Alternative, to Sever or Try Separately [Court Doc. 10] filed by Plaintiff Eastman Chemical Company;

• Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer Venue [Court Doc. 13] filed by Third-Party Defendant Apollo Environmental Strategies, Inc.; and

• Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, Motion to Transfer Venue [Court Doc. 44] filed by Third-Party Defendants BMC Holdings, Inc., Terra Capital, Inc. and Terra Industries, Inc.

For the reasons explained below, Plaintiff's Motion to Strike Defendant's Third Party

Complaint or, in the Alternative, to Sever or Try Separately [Court Doc. 10] will be **GRANTED IN PART** and **DENIED IN PART**, Third-Party Defendant Apollo's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer Venue [Court Doc. 13] will be **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, Motion to Transfer Venue [Court Doc. 44] filed by Third-Party Defendants BMC Holdings, Inc., Terra Capital, Inc. and Terra Industries, Inc. will be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Eastman Chemical Company ("Plaintiff") originally filed suit against Defendant URS Corporation ("Defendant," "URS" or "Third-Party Plaintiff") on September 13, 2010 in the Law Court for Sullivan County, Tennessee. (Court Doc. 1-2, Compl.) Defendant removed the case to this Court on October 1, 2010. (Court Doc. 1, Notice of Removal.) Defendant filed an Answer to the Complaint and shortly thereafter filed a Third Party Complaint against Apollo Environmental Strategies, Inc. (hereinafter "Third-Party Defendant Apollo" or "Apollo"), BMC Holdings, Inc., Terra Capital Inc., and Terra Industries Inc. (hereinafter referred to collectively as "Third-Party Defendants Terra," "Terra" or the "Terra entities"). (Court Docs. 3 & 7.) Plaintiff responded by filing its Motion to Strike Defendant's Third Party Complaint. (Court Doc. 10, Mot. to Strike Def.'s Third Party Compl.) While the original parties were briefing that Motion, Third-Party Defendant Apollo responded to the Third Party Complaint by filing its Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer Venue on November 10, 2010. (Court Doc. 13, Apollo Mot. to Dismiss.) Third-Party Defendants Terra later responded to the

Third Party Complaint by filing a similar Motion. (Court Doc. 44, Terra Mot. to Dismiss.)

The facts giving rise to the instant case do not appear to be in dispute. Plaintiff contracted with Defendant in 2008 to perform an environmental site assessment of a tract of land near Beaumont, Texas that Plaintiff was interested in purchasing. (Compl. ¶ 4.) Part of Defendant's site assessment involved an analysis of soil and ground water samples taken from several feet below the surface. (*Id.* ¶ 5.) Defendant obtained an Excavation Permit from the owner of the property and then contracted with Third-Party Defendant Apollo as a subcontractor to collect the samples. (*Id.*) On or about July 15, 2008, Apollo installed a soil boring in the ground to collect the samples and punctured a methanol pipeline owned by Third-Party Defendant Terra Industries, Inc. (*Id.* ¶ 6.) As a result of this puncture, more than 12,000 gallons of methanol escaped from the pipeline into the surrounding area. (*Id.* ¶ 8.) A significant rainfall shortly thereafter spread the contamination to storm water drainage ditches, resulting in the disposal of over 270,000 gallons of methanol contaminated storm water and 1,000,000 pounds of soil. (*Id.*)

The spill had to be cleaned according to legal standards set forth in state and federal regulations. (Compl. ¶ 9.) Third-Party Defendants Terra initially undertook this effort and demanded reimbursement from Plaintiff. (*Id.*) Plaintiff demanded indemnification from Defendant for Terra's liability claims, and Defendant refused. (*Id.*) Plaintiff alleges that it eventually reimbursed Terra for the $903,276.72 it incurred in responding to the spill, and has since expended another $82,000 completing the spill clean-up efforts. (*Id.*) Plaintiff filed suit against Defendant URS to seek reimbursement for its expenses under the contract the parties entered into, which requires Defendant to

indemnify, defend, and save harmless Plaintiff for any loss, costs, damages, expenses and liability caused by Defendant or its subcontractors.  (*Id.* ¶¶ 17-20.)

In the Third Party Complaint, Defendant asserts that if it is liable to Plaintiff, the Third-Party Defendants are liable for part of the claim.  (Court Doc. 7, Third Party Compl. ¶ 11.)  Defendant alleges that prior to drilling on the property, it submitted a drawing to the owner, E.I. DuPont Nemours & Company, Inc. ("DuPont") showing the planned location of each boring, and DuPont approved the plan and issued a drilling permit for each location. (*Id.* ¶ 15.)  Third-Party Defendants Terra also reviewed the plan and directed the adjustment of certain boring locations, but Defendant and Terra were never warned that any location was close to the methanol pipeline.  (*Id.* ¶¶ 15-16.)  Defendant alleges that if it is held liable for breaching its contract with Plaintiff, the same acts would constitute a breach of contract in its agreement with Apollo and Apollo would be liable for some or all of the damages.  (*Id.* ¶ 21.)  Defendant further alleges that Terra knew or should have known that Defendant and Apollo were drilling near the pipeline and should have directed Defendant and Apollo not to drill in that location and asserts that Terra acted negligently in activating a conveyance system that pumped additional methanol through the pipeline. (*Id.* ¶¶ 28-29.)

## II.    MOTION TO STRIKE THIRD PARTY COMPLAINT

Federal Rule of Civil Procedure 14 governs third-party practice.  Rule 14(a)(1) states that a defending party may "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it" within 14 days of its original Answer to the Plaintiff's Complaint.  The Rule further states that the Third-Party Defendants may

assert claims and defenses against the Third-Party Plaintiff; that the Plaintiff may bring claims against the Third-Party Defendants if they arise out of the transaction at issue between the Plaintiff and Third-Party Plaintiff; and that Third-Party Defendants may bring in a nonparty who might also be liable. Rule 14(a)(4) allows any party to "move to strike the third-party claim, to sever it, or to try it separately."

The United States Supreme Court stated in *United States v. Yellow Cab Co.*, 340 U.S. 543, 555 (1951) that "[t]he availability of third-party procedure is intended to facilitate, not to preclude, the trial of multiple claims which otherwise would be triable only in separate proceedings." The United States Court of Appeals for the Sixth Circuit has stated that "[t]he purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). "A third-party complaint cannot 'be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim.'" *Starnes Family Office, LLC v. McCullar*, 765 F.Supp. 2d 1036, 1057 (W.D. Tenn. 2011). But "[u]nderlying Rule 14 is a desire 'to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him.' . . . The third-party complaint is in the nature of an indemnity or contribution claim." *Am. Zurich*, 512 F.3d at 805 (citation omitted). "By its own language, Rule 14 requires an indemnity claim in order to bring in a third-party defendant whereby the defendant is attempting to transfer liability from himself to a third-party defendant in the event he is

-5-

found to be liable to the plaintiff." *Wells Fargo Bank v. Gilleland*, 621 F.Supp. 2d 545, 547 (N.D. Ohio 2009) (citing *Am. Zurich*).

Although Plaintiff argues otherwise, the Court finds that the circumstances present in this case are precisely those contemplated by the provisions of Rule 14. Defendant clearly asserts in its Response to Plaintiff's Motion that it expects the Third-Party Defendants to be liable to it for some or all of the damages that would result if Plaintiff prevails on its claims against Defendant. Defendant asserts that this secondary liability exists based on indemnity provisions or other claims that will only become relevant if Defendant is liable to Plaintiff. The Court is sympathetic to Plaintiff's desire to avoid unnecessary delay in what it characterizes as a simple breach of contract suit, but the Court views Defendant's Third-Party Complaint as appropriate, given the many parties that now need to be involved in this case. Accordingly, the Court **DENIES** Plaintiff's Motion to the extent it asks the Court to strike Defendant's Third-Party Complaint.

The Court will, however, **GRANT** Plaintiff's Motion to the extent it requests severance of the claims asserted in the Third-Party Complaint. The Court finds that because the liability of the Third-Party Defendants will likely not be invoked until the conclusion of the lawsuit between Plaintiff and Defendant, there is no logical reason to have the case proceed as one large action and one trial with all parties. Such result would lead to a trial that would be unnecessarily long and involve disparate issues that would likely be confusing to the jury. Further, it would seem that the Third-Party Defendants would not need to participate in some of the discovery that will be necessary as to the claims between Plaintiff and Defendant. There are several discovery and other issues that

may overlap, however, and the circumstances of the case require the parties to remain involved so that both cases can be efficiently resolved.[1]  As such, the Court will **SEVER** Defendant's Third-Party Complaint from the underlying action between Plaintiff and Defendant pursuant to Fed. R. Civ. P. 14(a)(4).

Moreover, as outlined in more detail below, the Court finds that the Third-Party Defendants are not – or should not – be subject to suit in this Court and, therefore, the Court will transfer this severed action – URS Corporation v. Apollo Environmental Strategies, Inc., BMC Holdings, Inc., Terra Capital, Inc., and Terra Industries, Inc. – to the United States District Court for the Eastern District of Texas, Beaumont Division.

## III.  MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR TRANSFER OF VENUE

### A.  Standards of Review

#### 1.  *Personal Jurisdiction*

When the issue of personal jurisdiction is raised by way of a motion under Rule 12(b)(2), the plaintiff (or, in this case, the third-party plaintiff) has the burden of establishing that jurisdiction exists.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiff may not meet its burden by simply standing on its pleadings; rather, the plaintiff must set forth, by affidavit or otherwise, specific facts showing that the Court has jurisdiction.  *Id.*

---

[1]  Essentially, the Court reaches the conclusion that severance is appropriate because the parties are already here.  It the Court struck Defendant's Third Party Complaint, Defendant would then likely initiate suit against Apollo and Terra in this forum or another, and any new case would likely give rise to the same or similar Motions currently before the Court.  The filing of a new and related lawsuit or lawsuits would only further delay matters, involve more costs for the parties, and expend more judicial resources.  The Court finds that allowing Defendant to proceed with the Third Party Complaint would best conserve judicial resources and foster a more efficient resolution of this case.

Presented with a properly supported 12(b)(2) motion and opposition, the Court has three procedural alternatives: decide the motion upon the affidavits alone, permit discovery on the motion, or conduct an evidentiary hearing to resolve any factual questions. *Id.*; *Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 508-09 (M.D. Tenn. 2005). If the Court does not conduct an evidentiary hearing, then the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Theunissen*, 935 F.2d at 1458; *Kelly*, 231 F.R.D. at 509. In such an instance, the pleadings and affidavits are viewed in the light most favorable to the plaintiff, and the Court will not consider the controverting assertions of the defendant. *Theunissen*, 935 F.2d at 1458-59; *Kelly*, 231 F.R.D. at 509. If the Court does conduct an evidentiary hearing, then the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Kelly*, 231 F.R.D. at 509.

In diversity cases, federal courts apply the law of the forum state, subject to constitutional limitations, to determine whether personal jurisdiction exists. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). Thus, a court must look not only to the forum state's long-arm statute, but also to the due process requirements of the Constitution. *Nationwide Mut. Ins.*, 91 F.3d at 793; *Reynolds*, 23 F.3d at 1115. Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process. *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985). When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only

determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

The Due Process Clause permits the exercise of personal jurisdiction over a defendant if either general jurisdiction or specific jurisdiction exists. *Id.* General jurisdiction exists when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims . . . ." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Defendant makes no argument as to general jurisdiction over Apollo because it claims that Apollo is subject to jurisdiction by virtue of the contract between Defendant and Apollo. As to Terra, Defendant does not make any argument as to general jurisdiction, and the Court finds that the facts do not support an exercise of general jurisdiction over the Terra entities. Accordingly, the Court will only address specific jurisdiction.

Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (citing various cases). The United States Court of Appeals for the Sixth Circuit has developed a three-pronged test to determine whether specific jurisdiction exists over a particular defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Because the Court has not held an evidentiary hearing on the issue of personal jurisdiction, the Court must view the pleadings and affidavits in the light most favorable to Third-Party Plaintiff

URS and must not consider facts proffered by the Third-Party Defendants that conflict with facts proffered by the Third-Party Plaintiff.

2. <u>Transfer of Venue</u>

28 U.S.C. § 1404(a) is a change of venue statute that applies only when venue is initially proper in the district in which the action was brought. *E.E.O.C. v. Northwest Airlines, Inc.*, 188 F.3d 695, 699 (6th Cir. 1999); *Martin v. Stokes*, 623 F.2d 469, 473 (6th Cir. 1980). The statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has broad discretion to transfer a case under this provision. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). The movant bears the burden of establishing that transfer is necessary, and there are several factors the Court must consider in analyzing any Motion to Transfer under § 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Naturally, the Court must consider the factors contained in the language of the statute itself: the convenience of parties, the convenience of witnesses, and the interests of justice. 28 U.S.C. § 1404(a). The Court may also consider other relevant factors, such as:

> [P]laintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)

(citation omitted); *see also Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002).

28 U.S.C. § 1406, an alternative transfer provision, states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

### B.     Third-Party Defendant Apollo

Apollo argues that it is not subject to personal jurisdiction in this Court because it is a nonresident party with no "minimum contacts" with the state of Tennessee.  (Court Doc. 14, Apollo's Mem. in Supp. of Its Mot. to Dismiss at 2-5.)  Apollo contends that the Court cannot exercise specific or general jurisdiction over it because Apollo did not purposefully direct any activities in Tennessee or engage in any continuous and systematic activities with Tennessee.  (*Id.*)  Apollo asserts that the contract between it and Defendant URS was negotiated and executed in Texas, the work was performed in Texas using Texas technology, the damages occurred in Texas, and all witnesses related to the case are in Texas.  (*Id.* at 3.)  Apollo contends that the only connection the case has to Tennessee is a provision in the contract between Plaintiff and Defendant, which is not applicable to Apollo.  (*Id.*)  Apollo further argues that jurisdiction in this Court would place an undue burden on it and offend notions of fair play and substantial justice.  (*Id.* at 5.)  Finally, Apollo asserts that the provision in the contract between it and Defendant URS (which invokes by reference the contract between Plaintiff and Defendant) does not provide for this Court as a forum because Apollo was never given the contract between Plaintiff and

Defendant.  (*Id.* at 7.)  Alternatively, Apollo argues that the provision in the contract it had with Defendant URS is ambiguous.  (*Id.* at 7-8.)  Apollo seeks dismissal based on lack of personal jurisdiction or transfer of the case to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).  (*Id.* at 8.)

Plaintiff and Defendant both filed Responses to Apollo's Motion.  (Court Docs. 22 & 24.)  Defendant URS argues in its Response that Apollo agreed to be bound by the dispute resolution provisions in the contract it had with Plaintiff, which specified this Court as the first proper forum.  (Court Doc. 22, Def.'s Mem. of Law in Opp. to Apollo's Mot. to Dismiss at 2.)  URS asserts that Apollo's arguments as to general and specific jurisdiction and minimum contracts are all irrelevant because it consented and agreed to be subject to suit in this forum and the provision by which it did so is not ambiguous.  (*Id.* at 7-9.)

Plaintiff responds only to request that the Court retain jurisdiction over its claims against Defendant URS and sever the Third-Party Complaint if the Court finds that it lacks personal jurisdiction over the Third-Party Defendants.  (Court Doc. 24, Pl.'s Resp. in Opp. to Apollo's Mot. in the Alternative to Transfer Venue at 2-3.)

The relevant portion of the subcontract between Defendant URS and Apollo reads as follows:

> Article XI - <u>Disputes</u>.  After first attempting to resolve disputes through good faith negotiations, the parties may pursue their respective remedies at law or equity for any claim, controversy, or dispute relating to this Subcontract, except to the extent that the Prime Contract provides otherwise.  **In the event that a dispute between URS and Subcontractor relates to a dispute between URS and Client, Subcontractor and URS agree to be bound by the dispute resolution procedures in the Prime Contract, and in such event, Subcontractor consents to joinder in any proceedings between URS and**

**Client upon the request of URS.** Subcontractor, however, shall not have the right to join in proceedings between URS and Client unless URS consents to the joinder.

(Court Doc. 14-2, Subcontract at 3 (emphasis added).) In Article I of the Subcontract, which references the Prime Contract between URS and its Client several times, it states that "[t]he Prime Contract is hereby incorporated into and made a part of this Subcontract by this reference. Applicable portions of the Prime Contract shall be made available to Subcontractor as an attachment to the applicable Work Order or upon request." (*Id.* at 1.) On the last page of the Subcontract is a Work Order which states that "[t]he Prime Contract, if applicable, is included as **Attachment 3** to this Work Order," but Attachment 3 contains only select terms of the contract between Plaintiff and Defendant and does not include any provision from the Prime Contract about dispute resolution. (*Id.* at 6, 15.) URS argues that the absence of this provision from Attachment 3 does not excuse Apollo from the provision because the Supplement does not indicate that these are the only terms of the Prime Contract that apply to the Subcontract. (Def.'s Mem. of Law at 9.)

Although the Court acknowledges that explicitly including more relevant provisions from the Prime Contract in the Subcontract would seem to have been a simple way to obviate the current dispute, the Court is not persuaded by Apollo's argument that URS' failure to include all the applicable provisions of the Prime Contract excuses it from compliance with those provisions. As the Subcontract stated, Apollo could have obtained the applicable provisions of the Prime Contract by requesting them from URS, and if these provisions were unacceptable, the parties could have negotiated otherwise. Furthermore, the Court does not find any ambiguity in the provision of the Subcontract that mandates

compliance with the Prime Contract for dispute resolution.  Accordingly, for the purposes of this Motion, the Court finds that venue and jurisdiction are proper in this forum by virtue of the dispute resolution provision of the Subcontract, which incorporates by reference the corresponding provision of the Prime Contract, which specifies this Court as the proper forum for disputes.

The Court does, however, find Apollo's argument with regard to the transfer of venue based on the convenience of parties and witnesses to be well taken.  The Court has broad discretion to transfer a case to another district for these reasons pursuant to 28 U.S.C. § 1404(a).  In this case, the issue is simple because nearly all of the factors the Court can consider weigh in favor of transfer.  Simply put, the locus of the events which gave rise to the Third-Party Complaint occurred in Texas, involved Texas land, individuals residing in Texas, and Texas agencies, affected Texas citizens, and implicated Texas statutes and regulations.  Almost all of the evidence and witnesses relevant to the Third-Party Complaint are located in Texas, and it would be far more convenient for non-party witnesses as well as the Third-Party Defendants to litigate the Third-Party claims in Texas.  Moreover, the implication of Texas statutes weighs in favor of transfer, as there are certainly significant benefits to having a Texas court apply its own state's laws rather than having a Tennessee court apply Texas state law.

The Court makes this finding, however, only with respect to the Third-Party Complaint and rejects Apollo's contention that the entire case should be transferred to Texas for purposes of convenience.  Plaintiff and Defendant agreed that this would be the proper forum for any breach of contract claims arising from their contract, and such claims can be handled in this forum without excessive inconvenience to either party and, perhaps,

without the level of reliance on the Texas evidence and witnesses that will likely be necessary to resolve the claims asserted in the Third Party Complaint. In addition, the Court has discretion to sever the Third Party Complaint from the underlying action and transfer it to Texas as a new, separate case. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 880 (6th Cir. 2006) (citing cases for the proposition that § 1404(a) allows for the transfer of properly severed claims as separate actions and the Court can maintain jurisdiction over non-severed claims). Moreover, as the Court has already pointed out, transfer, rather than dismissal, is necessary in this case because Defendant properly added Apollo as a Third-Party Defendant and some of the discovery that will be relevant in the case between Plaintiff and Defendant may be relevant as to the claims asserted in the Third-Party Complaint. The Court finds that the parties need to remain involved in the case as a whole so that certain parts of the litigation process need not be unnecessarily duplicated and the respective courts may work towards resolving both cases efficiently.

Finally, to satisfy the last requirement for transfer under § 1404(a), the Court finds that the transferee district is one in which suit might have been brought. Pursuant to § 1391(a)(2), venue is proper in the United States District Court for the Eastern District of Texas because a substantial part of the events giving rise to the Third Party Complaint occurred in that district.

Accordingly, the Court will **DENY** Third-Party Defendant Apollo's Motion to the extent it seeks dismissal from the action and will **GRANT** the Motion as to its alternative request to transfer venue to the United States District Court for the Eastern District of Texas, Beaumont Division, a district where URS could have brought suit against the Third-

Party Defendants.

### C. Third-Party Defendants Terra

Terra similarly asserts that its entities are not subject to personal jurisdiction in this Court and alternatively seeks transfer of venue to the United States District Court for the Eastern District of Texas, Beaumont Division pursuant to 28 U.S.C. § 1404(a). (Court Doc. 45, Mem. in Supp. of the Mot. to Dismiss at 1.) Terra argues that none of the entities sued conduct any business with or in the State of Tennessee, have any minimum contacts with the State, or have purposefully availed themselves of the benefits and protections of Tennessee law by conducting any activities in the State. (*Id.* at 4-5.) Terra asserts that none of the entities have conducted any activities with or in the State by which they might reasonably expect to be required to appear in a Tennessee court. (*Id.* at 5.) More specifically, Terra contends that the Court cannot exercise either specific or general jurisdiction over the entities and any such exercise of jurisdiction would offend the notions of fair play and substantial justice. (*Id.* at 5-6.) Even if the Court determines it has jurisdiction over Terra, Terra alternatively requests transfer of venue to Texas and further requests as another alternative that only the Third-Party Complaint be transferred to Texas. (*Id.* at 6-8.)

URS argues that the Terra entities are subject to personal jurisdiction in this Court by virtue of its dealings with Plaintiff Eastman Chemical Company and the application of the Tennessee Long Arm statute. (Court Doc. 53, Def.'s Mem. of Law in Opp. to Terra's Mot. to Dismiss at 4-13.) URS asserts that the Terra entities sold the methanol production and distribution facility in Texas to Plaintiff Eastman, a Tennessee company, which in turn

led to Plaintiff's contract with URS for soil testing services and further led to the instant claims. (*Id.* at 2-4.) Moreover, the Terra entities sought reimbursement from Plaintiff, a Tennessee company, for the cleanup costs after the methanol spill. (*Id.* at 3-4.) URS contends that application of the *Mohasco* test leads to the conclusion that the Terra entities are subject to personal jurisdiction in this Tennessee court. (*Id.* at 10-13.) Specifically, URS alleges that the Terra entities purposefully availed themselves of Tennessee based on the property transaction with Plaintiff (which URS represents involved over five million dollars) and because Plaintiff's action for breach of contract damages against URS is directly connected to Plaintiff's payment to the Terra entities to reimburse the cleanup costs. (*Id.* at 10-11.) URS argues against Terra's alternative requests for transfer of venue and, as to the request to transfer the Third-Party Complaint claims only, URS asserts that the case can most efficiently be resolved with one trial involving all parties. (*Id.* at 12-14.)

There is no Subcontract at issue with the Terra entities that contains any forum selection clause or incorporation of the Prime Contract between Plaintiff and Defendant, so the Court need only address whether the Terra entities are subject to personal jurisdiction in this Court. To do so, the Court will briefly address the *Mohasco* test that forms the basis for URS' argument.

The first prong of the *Mohasco* test requires that the defendant purposefully avail itself of the privilege of conducting activities in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Nationwide Mut. Ins.*, 91 F.3d at 795; *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989). The "purposeful availment" requirement ensures that a defendant is not haled into a jurisdiction solely as a result of

random, fortuitous, or attenuated contacts, or as the result of the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475.

> Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475-76 (citations and internal quotation marks omitted). In other words, purposeful availment is "something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [forum state] opportunities." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (citing *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978)).

Physical presence in the forum state is not required for personal jurisdiction, and a defendant could be found to be subject to personal jurisdiction in the forum state even if that defendant never physically entered the state. *Burger King*, 471 U.S. at 476. Telephone calls and letters sent into the forum state by the defendant may, but do not necessarily, establish personal jurisdiction. *See Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001); *LAK*, 885 F.2d at 1301. Likewise, the creation of a contract with a person in the forum state does not, standing alone, automatically establish sufficient minimum contacts with the forum state. *Burger King*, 471 U.S. at 478. In addition, as noted above, the

unilateral activity of another individual cannot satisfy the requirement of contact with the forum state by the defendant. *Nationwide Mut. Ins.*, 91 F.3d at 795. With any asserted contact with the forum state, it is the quality of that contact which is important, and the Court must determine whether the quality of the contact demonstrates purposeful availment. *LAK*, 885 F.2d at 1301. The Sixth Circuit has held that "[t]he mere fact that [defendant] entered into a contract with a Michigan corporation does not mean that [defendant] purposefully availed itself of the 'benefits and protections' of Michigan law." *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). What seems to be required, rather, is a contract and either some affirmative act of the defendant or some reasonable consequence within the state; "something more than a passive availment of [the forum state's] opportunities." *Neogen*, 282 F.3d at 891 (citation omitted).

In the instant case, Defendant URS made the Court aware of one contract whereby the Terra entities were "doing business" with a company with its principal place of business in Tennessee – the contract by which Plaintiff Eastman was purchasing a Texas facility from Terra. The Court knows nothing about the circumstances by which this contract came about – that is, what company made the first overtures to the other (although the Court could probably safely assume it was Plaintiff Eastman seeking out the property), what negotiations were involved, where those negotiations took place, and so forth. The basic facts available to the Court, however, indicate that this contract was for the purchase of a Texas facility owned by the Terra entities. This does not seem to be the kind of situation in which the Terra entities were actively soliciting business from Plaintiff Eastman, a Tennessee company, and the Court has no evidence before it that the transaction involved any ongoing services, Tennessee property or transfer of significant amounts of money to

Tennessee financial institutions. The Court does not consider this isolated contract with a company with its principal place of business in Tennessee to be sufficient to satisfy the "purposeful availment" prong of the *Mohasco* test.

Under the second prong of the *Mohasco* test, the cause of action must arise from the defendant's activities in the forum state. *Mohasco*, 401 F.2d at 381. Again, the Court does not interpret this contract as one in which the Terra entities were engaging in activities in Tennessee. Although the transaction did, in a somewhat convoluted way, give rise to the events which formed the basis for the instant case, if anything, this prong would more squarely support personal jurisdiction in Texas for Plaintiff Eastman – not personal jurisdiction over the Terra entities in Tennessee.

Under the third element of the *Mohasco* test, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Mohasco,* 401 F.2d at 381. If the first two prongs of the *Mohasco* test have been satisfied, there is generally an inference of reasonableness. *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). The defendant must provide compelling reasons to establish why jurisdiction would be unreasonable. *Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp.2d 726, 739 (E.D. Tenn. 2009) (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007)). The court can consider several factors to determine reasonableness, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera*, 428 F.3d at 618.

The Court does not find that the first two prongs apply, so there is no inference of reasonableness. Moreover, the Court cannot find that the Terra entities' activities with Tennessee established a "substantial" connection with the state such that jurisdiction would be reasonable. The Court therefore concludes that Defendant and Third-Party Plaintiff URS failed to meet its burden to establish a *prima facie* case that the Court has personal jurisdiction over the Terra entities. The Court thus concludes that it lacks personal jurisdiction over the Terra entities. This conclusion does not, however, lead the Court to dismiss the Terra entities from the case, as such a remedy would not further the interests of justice. Instead, the Court will transfer the claims against the Terra entities, along with the claims against Apollo, to the United States District Court for the Eastern District of Texas, Beaumont Division. The transfer of the claims involving the Terra entities, however, will be made pursuant to 28 U.S.C. § 1406 rather than § 1404(a).

Although the Terra entities have only argued in favor of transfer pursuant to 28 U.S.C. § 1404(a), that provision cannot be used to transfer a case (or part thereof) when the Court lacks personal jurisdiction over a given Defendant. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)). Conversely, the Court need not have personal jurisdiction over the Terra entities to transfer the claims against it under 28 U.S.C. § 1406. *Flynn v. Greg Anthony Construction Co.*, 95 F. App'x 726, 739 (6th Cir. 2003); *see also Pittock*, 8 F.3d at 329. In addition, the Court need not find that venue is improper before transferring the case pursuant to § 1406 because the Sixth Circuit has adopted a broad construction of this statute, noting that "§ 1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits . . . [t]hat defect may be either improper venue or lack of

personal jurisdiction." *Martin*, 623 F.2d at 474. Accordingly, because the Court has determined it lacks personal jurisdiction over the Terra entities, the Court has the discretion to transfer the claims against the Terra entities without determining whether venue is technically improper in this Court. Moreover, the requirement in § 1406(a) that the case be transferred to another "district or division in which it could have been brought" will be satisfied because United States District Court for the Eastern District of Texas is a venue in which the claims asserted by URS could have been brought pursuant to 28 U.S.C. § 1391(a)(2).

Finally, the Court finds that interests of justice and the simultaneous transfer of the claims against Apollo warrant the transfer of claims against the Terra entities for many of the same reasons.[2] As the Court has already noted with respect to Third-Party Defendant Apollo's Motion, the Third Party Complaint claims focus on events in Texas which involved Texas property, Texas individuals, Texas agencies, and invoked the application of Texas statutes and regulations. It will be far easier to secure the necessary means to resolve this lawsuit, i.e., evidence as well as the cooperation and attendance of witnesses, if the portion of the case against the Third-Party Defendants is litigated in Texas.

The Court acknowledges that Defendant URS has argued strenuously against having to proceed with litigation occurring in two separate forums; however, the Court can see no better way to efficiently resolve these disputes. Were the Court to dismiss the Third-Party Defendants from this case for any reason, Defendant URS would likely file suit

---

[2] In fact, if the Court had found it could exercise personal jurisdiction over the Terra entities, the Court would have reached the same result under § 1404(a) for the same reasons outlined in the analysis of Apollo's Motion.

against all Third-Party Defendants and would possibly need to do so in separate forums by virtue of the Subcontract with Apollo. The delay and costs associated with beginning a new case or cases are unnecessary and, as the Court has already noted, it would conserve judicial resources to avoid the filing of new cases that would likely involve many of the same issues presently before this Court. In addition, it is somewhat likely that some of the discovery issues in the underlying case and in the Third-Party Complaint will be similar enough to occur simultaneously. As such, the Court concludes that it is necessary to continue to have all parties involved, even if the litigation must – by convenience or necessity – occur in two separate forums.

Accordingly, the Court will **DENY** Terra's Motion to the extent it seeks dismissal from the action and will **GRANT** the Motion as to its alternative request to transfer venue to the United States District Court for the Eastern District of Texas, Beaumont Division, a district in which URS could have brought suit against the Third-Party Defendants.

## IV. CONCLUSION

For the reasons explained above, the Court **ORDERS** as follows:

- Plaintiff's Motion to Strike Defendant's Third Party Complaint or, in the Alternative, to Sever or Try Separately [Court Doc. 10] is **DENIED IN PART** to the extent that it requests the Court to strike the Third-Party Complaint, but is **GRANTED IN PART** to the extent that it requests that the claims asserted in the Third-Party Complaint be severed from the underlying action between Plaintiff and Defendant;

- Defendant Apollo's Motion to Dismiss for Lack of Personal Jurisdiction or, in

the Alternative, Motion to Transfer Venue [Court Doc. 13] is **DENIED IN PART** to the extent that it requests dismissal of the claims against it but is **GRANTED IN PART** as to the request to transfer venue;

• Terra's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, Motion to Transfer Venue [Court Doc. 44] is similarly **DENIED IN PART** as to the request for its dismissal from the action and **GRANTED IN PART** as to the alternative request to transfer venue;

• The Third-Party Complaint [Court Doc. 7] filed by Defendant URS Corporation is hereby **SEVERED** from the underlying action between Plaintiff and Defendant;

• The Court will maintain jurisdiction over the case of <u>Eastman Chemical Company v. URS Corporation</u>; and

• The Third-Party Complaint [Court Doc. 7] shall be **TRANSFERRED** to the United States District Court for the Eastern District of Texas, Beaumont Division, and the associated Third-Party Plaintiff and Third-Party Defendants will be parties to a case in that district styled as <u>URS Corporation v. Apollo Environmental Strategies, Inc., BMC Holdings, Inc., Terra Capital, Inc. and Terra Industries, Inc</u>.  The Court **DIRECTS** the Clerk's Office to transfer that portion of the case accordingly.

**SO ORDERED** this 4th day of August, 2011.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
